## THE ANCAIOS.

(District Court, D. Oregon. April 5, 1909.)

No. 5,013.

SHIPPING (§ 69\*) — MASTER — WRONGFUL DISCHARGE—RIGHTS UNDER ENGLISH LAW.

> Under the English admiralty law the master of a vessel wrongfully discharged abroad before the termination of the voyage has a lien for his wages earned and his action in rem therefor, but can have no relief against the ship for wages from the time of his discharge to the termination of the voyage, nor for the expenses necessary to carry him to his home port.
>
> [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 305; Dec. Dig. § 69.\*]

In Admiralty.

James Gleason, for libelant.
Williams, Wood & Linthicum, for claimant.

WOLVERTON, District Judge. The libelant was appointed master of the ship Ancaios under articles of date December 21, 1905, at a salary of $80 per month, Canadian currency, equal to £16. 10s. 8d. British Sterling; the time to count from the time of the libelant's leaving Liverpool for Cape Town to join the ship, and the service to continue until the ship's return to her home port, unless meantime sold or leased, in which event the usual provision for expenses home was to be made. In addition to the salary named, the libelant was entitled to "board, lodging, and keeping." The Ancaios is a British ship, flying the flag of Great Britain, and her home port is in England. Libelant left Liverpool for Cape Town December 23, 1905, and accordingly his wages began from that date. The ship proceeded from Cape Town to Newcastle, New South Wales; thence to Antofagasta, Chile.; thence to Newcastle, N. S. W.; thence to Callao, Peru; from Callao to Sydney and Newcastle, N. S. W.; and thence to Portland, Oregon, at which latter port libelant was discharged; the date thereof being, according to the libel, April 25, 1908. Libelant avers that he was wrongfully dismissed, and claims a balance due him for wages to the date of the dismissal in the sum of $328.69; further, for wages from that date until the ship's arrival in her home port, being for the space of one year, amounting to $960, and transportation and expenses home in the sum of $200.

The legal question is presented, and may now be considered, whether the master of a British ship may, in an action in rem against the vessel, recover wages from the time of his discharge, if the same be wrongful, till the arrival of his ship in the home port. Along with this may be also determined whether the master is entitled to recover for his expenses home. The question is dependent solely upon the admiralty law as administered in the English courts of adjudicature. As it relates to seamen, the law obtaining in England is as follows:

"If a seaman is wrongfully dismissed before the end of the voyage or of his term of employment, his wages are due for the whole of the voyage or until the period for which he was engaged terminates, if he has not before that time found new and equally lucrative employment. Any expenses which may be incurred by the seaman who is thus dismissed, in reaching his own country if he is discharged at a distance from it, and in maintaining himself until he is in a position to obtain fresh employment, are recoverable with the wages, subject to all questions of opposing claims such as the possessory lien of a shipwright." Roscoe's Admiralty Practice (3d Ed.) p. 256.

By a provision of the merchant shipping act of 1894 (being section 167 thereof):

"The master of a ship shall, so far as the case permits, have the same rights, liens, and remedies for the recovery of his wages as a seaman has under this act, or by any law or custom."

We are to resolve the question in hand by ascertaining the proper interpretation of the provisions of the shipping act, read in relation to the general provisions of law as it respects seamen's wages.

Dr. Lushington has, in two cases, namely, The Camilla, Swabey, 312, decided in 1858, and The Princess Helena, Lush. 190, decided in 1861, in view of the statute of 17 & 18 Victoria, being Merchant Shipping Act 1854, c. 104, § 191, which section is substantially section 167 of the merchant shipping act of 1894, being St. 57 & 58 Vict. c. 60, held in effect that a master engaged for a voyage out and home, if wrongfully dismissed abroad, is entitled to his wages until the termination of the entire voyage, or until he has obtained other employment. The holding is the result of that eminent jurist's interpretation of the statute of 17 & 18 Victoria, extending to the master the same rights, liens, and remedies for the recovery of his wages as the seamen possessed. His reasoning is cogent and persuasive, and, were it not for a later adjudication made in the Court of Appeals from the Probate, Divorce, and Admiralty Division of the High Court of Justice in England, I should have been content to follow him. The case referred to is that of The Arina, decided in 1887, and reported in the Law Reporter, Probate Division, vol. 12, p. 118. In this case the master claimed double pay, which seamen were entitled to recover under St. 17 & 18 Vict. c. 104, § 187, and also payment until the time of final settlement with him, as is allowed to seamen unless the delay is occasioned by their default, under St. 43 & 44 Vict. c. 16, § 4, and it was held that St. 17 & 18 Vict. c. 104, § 191, extended to the master the same remedies only as the law accorded to seamen for the enforcement of the payment of their wages, and that it did not entitle the master to the added wages provided for by law for the seamen in case of default in payment on the part of the ship. The court, after quoting from Dr. Lushington's reasoning against the right of the master to extra pay, and referring to the provisions of the statute, concludes as follows:

"We think, therefore, that the extra payment is not made part of the seamen's wages by section 187. Even were it otherwise—were the extra payment made part of the seamen's wages—it would by no means follow that section 191 makes a similar extra payment part of a master's wages. By the words of section 191 a master is to have, not the same right to wages as the seaman, but only the same rights, liens, and remedies for the recovery of his wages. It does not purport to give the master any additional wages, but only the same

rights, liens, and remedies for the recovery of his wages as the seaman has for the recovery of his. This distinction is emphasized by the fact that section 187 is one of the sections printed under the heading 'Legal Right to Wages,' whereas section 191 comes under a different heading, viz., 'Mode of Recovering Wages.' * * *

"The extra payment not being by the act made part of the master's wages, can he nevertheless recover it as a 'remedy' for the enforcement of due payment of his wages? The plaintiff contends that, even if the extra payment be regarded as a penalty, it is one of the means of enforcing due payment of wages given to the seamen; is, in fact, a 'remedy' for the recovery of his wages, and therefore enforceable by the master under section 191.

"We do not think this argument maintainable. Before the enactment in question, the master had no lien on the ship for the enforcement of his claim to wages except under 7 & 8 Vict. c. 112, s. 16, in case of the bankruptcy or insolvency of the owner. We think full and ample effect may be given to section 191 of the act of 1854 by construing it as giving to masters in all cases a lien, and the consequent remedy in rem, without holding that it also confers upon him the right of recovering a penalty for nonpayment of his wages in due time."

The case is in complete analogy to the one at bar, although a statute is being considered as to its effect upon existing general law. It is therefore controlling here, as I am bound by the construction given by the courts of England to her own statutes, especially as I am deciding a cause governed by the English law. The master has no lien except by statute, and this now so far only as the seaman has a lien against the ship for his wages. He is entitled to the same remedies for the recovery of his wages as seamen are, but he is not entitled to any added wages, which are given to seamen as a sort of penalty for the wrongdoing of the ship's master in discharging them without cause. Under the remedy thus extended by statute, the master has a lien for his wages earned, and his action in rem, but further than that he can have no relief against the ship, whatever his remedy might otherwise be. For the same reason, it follows irresistibly that the master has no relief against the ship for his expenses sufficient to carry him to his home port when wrongfully discharged abroad.

In coming to this conclusion, the case of The Great Eastern, Law Reports, Admiralty & Ecclesias, vol. 1, p. 383, has not been overlooked. That, however, is the case of a seaman suing for his compensation in the nature of damages for a wrongful discharge under section 10 of the admiralty court act of 1861; the court holding that admiralty has jurisdiction to entertain the cause. The cause was decided in 1867, the judgment being rendered by Dr. Lushington, who was at the time, through illness, unable to appear in court. The case is not cited either by counsel or the court in The Arina, but it is altogether probable that, had it been brought to the attention of the court, its ruling would not have been affected. At all events, the latest expression of the English courts upon the subject in hand, so far as I am advised, is contained in The Arina, and, being the latest, impels me to a like conclusion.

It is with reluctance that I am thus persuaded, as I do not think, from a careful consideration of the entire testimony in the case at bar, that sufficient cause existed for the dismissal of Capt. Ritchie. A letter of date March 28, 1907, written by James & Alexander Brown, of Newcastle, N. S. W., who were the agents of Soley & Co., Ltd., with

full power to remove Ritchie for cause if any such existed, indicates very clearly that Ritchie was conducting himself in an exemplary way, and attending strictly to the ship's business and interests. Hence he was not removed. There was probably no greater cause for his dismissal at Portland. It is true the ship had bad luck on occasions, but the testimony fails to show that it was attributable to her master. It has developed that the Ancenis' experience was nearly as bad. This was another ship under the same management. It seems to me that Soley & Co. recognized this fact when, by its letter of March 18, 1908, directed to Ritchie, notifying him of its determination to dismiss him, it proposed, in case of Ritchie's being without funds, to pay his passage East.

Now, as to the account of Capt. Ritchie with the ship. A statement of account was had between him and James & Alexander Brown, of Newcastle, N. S. W., who were the agents of the ship, on February 27, 1907, whereby a balance was found to be due Ritchie in the sum of £36. 10s. 11d. The statement of account is signed by Ritchie, thus showing his approval of the same. He was given credit in the account for his wages to the date thereof. Another accounting was had on March 28, 1907, showing a balance due the master of £18. 8s. 7d., which credits him with an additional month's wages. On December 11, 1907, Ritchie received from James & Alexander Brown £120., and made some disbursements, leaving a balance in his hands of £99. 4s. On January 13, 1908, Ritchie received from the same agents £40. of which he disbursed £19. 5s., leaving in his hands £20. 15s. In consideration of these matters, a statement of Capt. Ritchie's account with the ship is as follows:

J. E. Ritchie.
In Account with the Ship Ancaios.

Cr.

| | | |
|---|---|---|
| March 22, 1907. By bal. favor master, per st. of % | 18. | 8. | 7 |
| " master's wages from March 27, 1907, to April 25, 1908, 12 mo. 29 days, @ 16-10-8 per mo | 214. | 7. | 8 |
| Total | 232. | 16. | 3 |

Dr.

| | | |
|---|---|---|
| July 14, 1907. To bal. cash captain's private % | 25. | 15. | 4 |
| Dec. 12. 1907. " " " " " " | 99. | 4. | 0 |
| Jan. 13, 1908. " " " " " " | 20. | 15. | 0 |
| " Broughton's % for tobacco paid by ship Mar. 26, 1907 | 10. | 3. | 0 |
| " Broughton's % for tobacco paid by ship June 12, 1907 | 30. | 1. | 0 |
| " R. H. Menzies' shop account paid by ship Sept. 12, 1907 | 18. | 14. | 0 |
| " Pearce's % repairs sextant, paid by ship Sept. 12, 1907 | | 5. | 0 |
| Total | 204. | 17. | 4 |
| Leaving a balance due the master of | 27. | 18. | 11 |

This is equivalent to $135.22 Canadian money, for which, with interest at 6 per cent. from April 25, 1908, the libelant is entitled to judgment.